UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DEBRA DORSEY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 09-1085 (RMC) |
| JACOBSON HOLMAN, PLLC, *et al*., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Debra Dorsey complains that her former employer, Jacobson Holman, The Jacobson Holman PLLC Profit-Sharing Plan, and John C. Holman as Plan Administrator (collectively, Jacobson Holman), violated the American Recovery and Reinvestment Act of 2009 ("ARRA") when it denied her health insurance premium assistance.[1] Jacobson Holman points to the administrative appeals process at the Department of Labor for any denial of ARRA benefits and moves to dismiss Count II of the First Amended Complaint for failure to exhaust. Ms. Dorsey opposes, arguing that the Employee Retirement Income Security Act does not require her to exhaust administrative remedies. However, since Ms. Dorsey's possible entitlement to assistance with her health insurance premiums arises only under ARRA, and since Congress established an expedited review process at

---

[1] Ms. Dorsey also sued the Jacobson Holman PLLC Health Benefit Plan but the Jacobson Holman Defendants say no such entity exists. *See* Def.'s Mem. in Supp. of Summ. J. [Dkt. # 12-1] at 1 n.1. Ms. Dorsey does not contest this assertion, and thus the Health Benefit Plan will be dismissed as a Defendant in this case. *See Hopkins v. Women's Div., General Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments, a court may treat those arguments that the plaintiff failed to address as conceded) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)).

DOL for denial of benefits, the Court concludes that Congress intended to funnel all complaints through that process where they might be resolved without the delay and expense of litigation. In the exercise of its discretion, the Court will require administrative exhaustion. The motion will be granted.

## I. FACTS

### A. Statutory Background

#### 1. ERISA and COBRA Benefits

Part 6 of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1161-1166, and parallel provisions of the Internal Revenue Code, 26 U.S.C. § 4980B, were enacted as part of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").[2] Under these provisions, a group health plan must provide each qualified beneficiary who would lose health insurance coverage as a result of a "qualifying event" the option of continuing such coverage for 18 months by paying for it individually. Termination of employment that would result in loss of health insurance constitutes such a qualifying event. 29 U.S.C. § 1163. If a terminated employee elects to continue insurance coverage, the plan may require payment of a premium up to 102% of the cost of the coverage for similarly-situated beneficiaries. 29 U.S.C. §§ 1162 & 1164. The additional 2% covers the cost of administration. This is commonly referred to as a COBRA benefit.

#### 2. American Recovery and Reinvestment Act of 2009

The ARRA, Pub. L. No. 111-5, 123 Stat. 115 (2009), popularly known as the Stimulus Act, was passed as emergency legislation to rescue the American economy from the recent

---

[2] Regulations have been issued by the Secretary of the Treasury. *See* 26 C.F.R. § 54.4980B-1 to 54.4980B-10.

deep recession. It contains provisions to enable jobless persons to afford continuing health insurance coverage through a subsidy of their COBRA premiums. Section 3001 of ARRA, 123 Stat. at 455-466, provides for a 65% reduction in the premium otherwise payable by an Assistance Eligible Individual who is involuntarily terminated from employment and who elects continuation of insurance coverage through COBRA. This cost is recouped by a tax credit. An Assistance Eligible Individual is generally someone who: (1) is eligible for continued health insurance coverage under COBRA at any time from September 1, 2008 through December 31, 2009;[3] (2) elects to continue health insurance coverage and pay COBRA costs; and (3) is involuntarily terminated (or, under amendments, had hours significantly reduced so as to deprive an employee of eligibility for health insurance) during the relevant period.[4] *See* http:www..gov/ebsa/newsroom/2010/ebsa041610.html (last visited on April 26, 2010 at 9:00 a.m. EST), Statement of Asst. Sec. Phyllis C. Borzi. If eligible, a former employee would be required to pay only 35% of the required COBRA premium.

ARRA also provides that an individual who is *denied* a reduced COBRA payment by a plan, employer, or insurer has a right of appeal in the form of a streamlined, expedited process of review by the Secretary of Labor. The ARRA provides:

> EXPEDITED REVIEW OF DENIALS OF PREMIUM ASSISTANCE –
> In any case in which an individual requests treatment as an assistance eligible individual and is denied such treatment by the group health plan, the Secretary of Labor (or the Secretary of Health and Human Services in connection with COBRA continuation coverage which is provided other than pursuant to part 6 of subtitle B of title I of the Employee Retirement Income Security Act of 1974), in consultation with the Secretary of the Treasury, shall provide for expedited review of such denial. An individual shall be entitled to such review upon application to such Secretary in such

---

[3] The time period has now been extended to May 31, 2010.

[4] The "relevant time period" is from September 1, 2008 to May 31, 2010.

> form and manner as shall be provided by such Secretary. Such Secretary shall make a determination regarding such individual's eligibility within 15 business days after receipt of such individual's application for review under this paragraph. Either Secretary's determination upon review of the denial shall be de novo and shall be the final determination of such Secretary. A reviewing court shall grant deference to such Secretary's determination. The provisions of this paragraph, paragraphs (1) through (4), and paragraph (7) shall be treated as provisions of title I of the Employee Retirement Income Security Act of 1974 for purposes of part 5 of subtitle B of such title.

ARRA § 3001(a)(5), 123 Stat. at 458. The Secretary must issue her decision within fifteen business days after receipt of a complete application for review, and courts are to give deference to the Secretary's determination. *Id.*

When it passed ARRA, the Committee on Ways and Means of the House of Representatives issued a publication entitled *"How To" Manual on Health Coverage for the Unemployed in the American Recovery and Reinvestment Act*. *See* Defs.' Mot. to Dismiss [Dkt. # 12] ("Defs.' Mot."), Ex. 3 ("How To" Manual). This publication answered "frequently asked questions on the COBRA premium reduction." *Id.* (lower case substituted). In summary, the Committee explained that a "65% reduction in the premiums payable by involuntarily terminated workers and their families for health care continuation coverage under COBRA" was available under ARRA and would "last for up to 9 months." *Id.* In answering the question as to who is eligible for the premium reduction, the pamphlet explained:

> To be eligible for the premium reduction, you must be a COBRA qualified beneficiary who meets all of the following requirements:
>
> • Is eligible for COBRA continuation coverage as a result of Federal or State law at any time during the period beginning September 1, 2008 and ending [May 31, 2010];
>
> • Elects COBRA coverage (when first offered or during the

additional election period); and

- Was involuntarily terminated during the period beginning September 1, 2008 and ending [May 31, 2010].

*Id.* at 1. The House Committee also gave the following advice:

> **11. QUESTION: What do I do if I think I qualify for the COBRA premium reduction but my plan tells me I do not?**
>
> A. If your health plan finds that you are ineligible for the premium reduction, you can apply for review of that determination by the Secretary of Labor or by the Secretary of Health and Human Services depending on your type of plan . . . . The Secretary will review your application and make a determination within 15 business days.
>
> **12. QUESTION: Where do I send my appeal?**
>
> A. The Departments of Labor (DOL) and Health and Human Services (HHS) are currently developing processes and an official form that will be required to be completed for applications for review.

*Id.* at 4. Thereafter, DOL also published guidance on its own website that contains an Application for Review of Denial of COBRA Premium Reduction and advises:

> If you believe you are eligible for COBRA continuation coverage and for this premium reduction through a private sector health plan sponsored by an employer with at least 20 employees, but your request for these benefits or the reduced premium has been denied, you may apply to the U.S. Department of Labor to review the denial.

*See* http://www.dol.gov/ebsa/COBRA.html (last visited on Apr. 26, 2010 at 9:30 a.m. EST). The official application form is available at www.dol.gov/COBRA and can be filed online or submitted by fax or mail. *Id*.

### B. Facts

Debra Dorsey worked for Jacobson Holman until September 16, 2007. First Am. Compl. [Dkt. # 2] ¶ 18. Thereafter, she elected to receive her health insurance coverage under

COBRA. On April 10, 2009, Ms. Dorsey asked Jacobson Holman to adjust her payments to the reduced COBRA premium provided by ARRA. *Id*. ¶ 36. She emailed her request, stating:

> . . . I am eligible for a reduction in my COBRA benefits. I refer you to the Department of Labor's website, www.dol.gov/ebsa. for the specifics. I spoke with Mr. Wardlow at the Department of Labor this morning, and he confirmed that I was eligible for COBRA benefits and asked that I contact you immediately to obtain the required information.

Defs.' Mot., Ex. 1 (email exchange between Ms. Dorsey and Simor Moskowitz). Mr. Moskowitz, the Jackson Holman official authorized to respond to COBRA premium reduction requests, replied on the same day, refusing to permit Ms. Dorsey to pay a reduced premium as follows:

> We respectfully disagree with your position that you are entitled [to] a COBRA premium subsidy.
>
> In our view, you *voluntarily* resigned and thus are not eligible from the COBRA premium reduction which relates only to *involuntary* termination, as acknowledged in your email. You effectively abandoned your job by not returning to it at the expiration of the FMLA[5] period; no action was required on your part. Whether or not you want to acknowledge that you resigned is a matter of semantics. The bottom line is that you left your job, never came back, making it clear that you could not and would not come back.
>
> We therefore decline your request that we subsidize your COBRA premium payment.

*Id*. (emphasis in original).

Ms. Dorsey then sought help from the DOL. On her behalf, "a representative of the agency contacted Jacobson Holman to advise them that she was entitled to the ARRA subsidized premium" but "[d]espite this determination, Jacobson Holman, PLLC denied [her] the subsidized premium." First Am. Compl. ¶¶ 33-42 (Count II).

---

[5] The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., guarantees most workers 12 weeks of unpaid leave for illness, the birth of a child, and other such events.

In this lawsuit, Ms. Dorsey asserts that she meets all the requirements for the premium subsidy and that the DOL has already "determined" her eligibility. *Id*. ¶¶ 34-35, 38-39. She alleges that this denial of benefits violated ERISA and the Internal Revenue Code, as amended by ARRA. *Id.* ¶¶ 40-41. Jackson Holman asserts that Ms. Dorsey is required to exhaust administrative remedies before pursuing her claim in court.

## II. LEGAL STANDARD

"[T]he existence of an administrative remedy automatically triggers a non-jurisdictional exhaustion inquiry." *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1248 (D.C. Cir. 2004). Jackson Holman's motion to dismiss Count II due to failure to exhaust is a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

A Rule 12(b)(6) motion to dismiss challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.

A court must treat the complaint's factual allegations as true, "even if doubtful in

fact." *Id.*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

### III. ANALYSIS

Here, Ms. Dorsey contacted a Benefits Advisor at DOL but never followed through with an application for review of Jacobson Holman's denial of a subsidized premium for her COBRA insurance coverage. She has no "final agency action" to appeal to this Court, but she insists that she does not need one. "Because the [Benefits Advisor] did not know when the appeal process would be available, Plaintiff sought counsel and on June 9, 2009 commenced this action." Pl.'s Opp'n [Dkt. # 17] at 3. Ms. Dorsey brings her suit under ERISA Sections 502(a)(1)(B), (a)(2) and (a)(3)(B). *See* 29 U.S.C. § 1132(a)(1)(B) (allowing a participant or beneficiary to bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan"); *id*. § 1132(a)(2) (allowing a participant or beneficiary to sue for "appropriate relief" for breach of a fiduciary duty); *id*. § 1132(a)(3)(B) (allowing a participant or beneficiary "to obtain other appropriate equitable relief (i) to redress such violations [of this subchapter] or (ii) to enforce any provisions of this subchapter"). First Am. Compl. ¶ 1. Therefore, she argues, this case can proceed without regard to the administrative appeal process. In the alternative, Ms. Dorsey suggests that she did contact DOL before the appeal process was established and that should suffice.

Although ERISA itself does not specifically require the exhaustion of remedies available under health plans prior to a lawsuit, the courts have uniformly applied this requirement "as a matter of judicial discretion." *Communications Workers of Am. v. AT&T Co.*, 40 F.3d 426, 431-32 (D.C. Cir. 1994); *Hunter v. Metro. Life Ins. Co.*, 251 F. Supp. 2d 107, 110 (D.D.C. 2003) ("ERISA does not specifically require the exhaustion of remedies available under pension plans but courts have uniformly applied this requirement as a matter of judicial discretion.") Thus, "it is well established that, barring exceptional circumstances, plaintiffs seeking a determination pursuant to ERISA of rights under their pension plans 'must . . . exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court.'" *Communications Workers*, 40 F.3d at 431 (quotation omitted). The exhaustion requirement applies to claims for benefits as well as claims for breach of a fiduciary duty. *Simmons v. Willcox*, 911 F.2d 1077, 1081 (5th Cir. 1990).

It is noteworthy that Section 3001(a)(5) of ARRA specifies: "[t]he provisions of this paragraph . . . shall be treated as provisions of title I of the Employee Retirement Income Security Act of 1974 for purposes of part 5 of subtitle B of such title." ERISA Section 502, 29 U.S.C. § 1132, discussed above, is part of part 5 of subtitle B of that law. Since exhaustion is required in most contexts under ERISA,[6] it would not be strange to require exhaustion under ARRA.[7]

---

[6] Exhaustion is excused if a litigant's interest in an immediate judicial forum clearly outweighs the institutional interests underlying the exhaustion requirement. *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992). For example, exhaustion may be excused if delaying judicial review would cause irreparable injury, if the agency is not competent to address the issue or grant effective relief, or if further pursuit of an administrative remedy would be futile. *Id.* at 146-49; *see Boivin v. U.S. Airways, Inc.*, 446 F.3d 148, 157-58 (D.C. Cir. 2006).

[7] In the only reported case related to premium reduction under the ARRA, the plaintiff exhausted his administrative remedies. *See Hejazi v. United States Department of Labor*, No. C09-

Of course, the Secretary of Labor is not a plan fiduciary. However, Congress passed the Stimulus Act to jump-start the American economy and bring it out of a deep recession. ARRA was designed to give individuals who had been involuntarily terminated a less expensive option to maintain COBRA health insurance coverage. It is entirely consistent with the emergency nature of the legislation that Congress established a swift and sure administrative review process of any plan or employer or insurer's denial of COBRA premium reduction. The Secretary is directed to decide any appeal within 15 business days of receipt of a completed application, and the courts are directed to give deference to the Secretary's decision. ARRA § 3001(a)(5), 123 Stat. at 458. Under this regime, individuals who are eligible for premium reductions can obtain that benefit almost immediately, which is in direct furtherance of the congressional purpose. It blunts that purpose to require – or allow – individuals to turn in the first instance to the courts. Notably, Ms. Dorsey filed this suit on June 9, 2009, the parties completed briefing on Jacobson Holman's motion to dismiss Count II on January 22, 2010, and the motion is finally decided today — none of which tells us whether Ms. Dorsey is or is not an assistance-eligible individual. It would have been far more speedy to follow the congressional path.

## V. CONCLUSION

It is entirely consistent with the policies and purposes of ARRA to require an individual who is denied a COBRA premium reduction to utilize the administrative appeal process before bringing a federal lawsuit. Ms. Dorsey did not file an appeal to the Secretary and Count II,

---

1018RSL, 2009 WL 3485958 (W.D. Wash. Oct. 26, 2009). In that case, the plaintiff appealed his employer's denial of a reduced premium request to the DOL, and when the DOL affirmed the denial, the plaintiff brought suit against the DOL under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *Id*. at * 2. The court held that the Department of Labor did not act arbitrarily or capriciously. *Id*.

complaining of Jacobson Holman's denial of Ms. Dorsey's request for COBRA premium reduction, is therefore premature. Defendants' motion to dismiss [Dkt. # 12] Count II will be granted. A memorializing Order accompanies this Memorandum Opinion.


Date: April 27, 2010                              _____/s/_____
                                                  ROSEMARY M. COLLYER
                                                  United States District Judge