# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                    |   |                              |
|------------------------------------|---|------------------------------|
| DEBRA DORSEY,                      ) |   |                              |
|                                    ) |   |                              |
| Plaintiff,                         ) |   |                              |
|                                    ) |   |                              |
| v.                                 ) |   | Civil Action No. 09-1085 (RMC) |
|                                    ) |   |                              |
| JACOBSON HOLMAN, PLLC, *et al.*,   ) |   |                              |
|                                    ) |   |                              |
| Defendants.                        ) |   |                              |

## MEMORANDUM OPINION

Suffering from carpel tunnel syndrome in both of her wrists, Plaintiff Debra Dorsey took leave from her position as a secretary at the law firm of Jacobson Holman, PLLC, for surgery in September 2007. The firm treated her absence as protected under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*, and the District of Columbia Family and Medical Leave Act ("DCFMLA"), D.C. Code §§ 32-501, *et seq.*, although it gave her no notice of those rights. Plaintiff had surgery on one wrist in September 2007 and surgery on the other wrist in December 2007. In February 2008, she completed paperwork to apply for disability insurance and delivered a copy to her boss. In June 2008, her application for disability insurance was approved, retroactive to December 2007. Plaintiff sues here alleging the following violations: (1) failure to make a year-end contribution to the Jacobson Holman PLLC Profit Sharing Plan ("Profit Sharing Plan") on her behalf; (2) failure to pay her a 2007 year-end bonus; (3) failure to pay her accumulated vacation leave; and (4) retaliation via termination of her employment and interference regarding her rights under the FMLA/DCFMLA. Defendants are the law firm, the Profit Sharing Plan, and John C. Holman as Plan Administrator of the Profit Sharing Plan, all of whom move for summary judgment.

Defendants' motion for summary judgment will be granted in part and denied in part. Because Plaintiff could not perform her job at the end of the FMLA/DCFMLA protection period, the Court will grant summary judgment to Defendants on the claims of violation of FMLA/DCFMLA for termination of her position and interference with her rights under those statutes. The Court will also grant summary judgment on the claim that Plaintiff was not paid a discretionary year-end bonus, contrary to the D.C. Wage Payment Act. Summary judgment will be denied on all other claims.

**I. FACTS**

Plaintiff worked as a secretary for Jacobson Holman since February of 1991. On September 17, 2007, Plaintiff went out on workers' compensation due to her carpel tunnel syndrome. She worked for member John "Jace" Holman during the entire period of employment. Plaintiff underwent surgery for her carpel tunnel syndrome on September 18, 2007 for one wrist and December 16, 2007 for the other wrist.

Unfortunately, these surgeries did not improve Plaintiff's condition and she continued to experience severe pain. Ultimately, on February 20, 2008, Plaintiff applied for disability insurance. When she applied for disability, Plaintiff gave a copy of the application to Mr. Holman on February 22, 2008. Her accompanying letter asked for "all documentation necessary to roll over my Fidelity profit sharing and 401(k) funds to my new account." Defs.' Mem. in Support of its Mot. For Sum. J. ("Defs.' Mem.") [Dkt. #25], Ex. 4. Simor Moskowitz of Jacobson Holman wrote to Plaintiff on February 26, 2007, indicating that "it is understood that you have resigned your employment" as a result of her conversation with Mr. Holman, but he noted that her letter "does not specifically say that you have resigned," which he stated the law firm needed in order to initiate the

roll-over paperwork. Defs.' Mem., Ex. 5. Mr. Moskowitz asked for "a written letter of resignation, simply stating that you have resigned from and are no longer employed by Jacobson Holman PLLC." *Id.* Plaintiff's response is not reflected in the record, but Mr. Moskowitz wrote to her again on March 4, 2008, to tell her that Jacobson Holman "consider[s] that you have resigned as of February 22, 2008." *Id.*, Ex. 6. Mr. Moskowitz sent the necessary forms for Plaintiff to roll over her retirement accounts. *Id.* Plaintiff signed the space by which she "[a]cknowledged and [r]eceived" that letter. *Id.*

In June 2008, Plaintiff's application for disability insurance was approved by the insuror, retroactive to mid-December 2007.

Defendants maintained a Profit Sharing Plan, which was an employee benefit pension plan offered by Defendants for the benefit of its employees. Second Am. Compl. ¶ 5. The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, provides employees certain rights under the Profit Sharing Plan, including enforcement rights in federal court. Pl.'s Mem. in Opp'n to Mot. for Sum. J. ("Pl.'s Mem.") [Dkt. # 31], Ex. 3, at 19–20. Under section III (B)(1) of the Profit Sharing Plan, to be eligible for profit sharing contributions, an employee must "complete at least 1,000 hours of service during the Plan Year and be employed as of the last day of the Plan Year." *Id.*, p. 9. Plaintiff completed 1,000 hours of service in 2007. *Id.* at 8.

Defendants admit that Plaintiff "was not paid a profit sharing contribution for Plan Year 2007," Defs.' Facts in Support of its Mot. for Sum. J. [Dkt. # 25] ("Defs.' Facts") ¶ 6; "was not paid a bonus for 2007," *id.* ¶ 4; and "was paid for 4.51 hours of accrued but unused leave" later than required under the D.C. Wage Payment Act, *id.* ¶ 5. Defendants insist that Plaintiff was not discharged, but rather, that she resigned. *Id.* ¶ 8.

## II. LEGAL STANDARDS

### A. FMLA/DCFMLA

Under certain circumstances, the FMLA and its DC counterpart, the DCFMLA, grant an employee the right to take temporary medical leave from employment, without the threat of, or actual termination, from her job. The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee," 29 U.S.C. § 2612(a)(1)(D), and the DCFMLA provides that "any employee who becomes unable to perform the functions of the employee's position because of a serious health condition shall be entitled to medical leave for as long as the employee is unable to perform the functions, except that the medical leave shall not exceed 16 workweeks during any 24-month period." D.C. Code § 32-503.

As stated in *Roseboro v. Billington*, 606 F. Supp. 2d 104 (D.D.C. 2009), there are two viable claims under the FMLA:

> (1) an interference claim under §§ 2615(a)(1), in which the employer has restrained, denied, or interfered with the employee's substantive rights under the Act, and (2) a retaliation claim under §§ 2615(a)(2), in which the employer has taken adverse action against the employee because the employee took leave or otherwise engaged in activity protected by the Act.

606 F. Supp. 2d at 107–108.

### B. Employee Retirement Income Security Act

The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, sets uniform minimum standards for private sector employee benefit plans to ensure these

4

benefit plans are established and maintained in a fair and financially sound manner. *See generally* 29 U.S.C. § 1001. ERISA provides for a civil action "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

### C. D.C. Wage Payment Act

Under the D.C. Wage Payment Act, an employer must remit all wages to an employee the next working day after terminating that employee, unless there is a dispute about those wages. *See* D.C. Code §32-1303(1). If this does not occur, "such employer shall pay, or be additionally liable to, the employee, as liquidated damages, 10 per centum of the unpaid wages for each working day during which such failure shall continue after the day upon which payment is hereunder required, or an amount equal to the unpaid wages, whichever is smaller." *Id*. §32-1303(4).

### D. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S.

5

at 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Id.*; *Celotex*, 477 U.S. at 322.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

Plaintiff brings suit against Defendants for their: (1) failure to make contributions to a Profit Sharing Plan to which Plaintiff argues she was entitled; (2) failure to pay unpaid leave, in violation of the D.C. Wage Payment Act; (3) failure to pay Plaintiff a year-end bonus, in violation of the D.C. Wage Payment Act; and (4) violation of her rights under the FMLA/DCFMLA through interference and retaliation.

### A. Profit Sharing Plan

Defendants argue Plaintiff was not entitled to contributions in the Profit Sharing Plan because she was not an employee on the last day of the year, as is required under section III (B)(1) of the Profit Sharing Plan. Pl.'s Mem., Ex. 3, p. 9. Defendants point to the Profit Sharing Plan's Adoptive Agreement, which outlines these same continuing eligibility requirements, *i.e.*, (1) employed on last day of the plan year; and (2) worked at least 1,000 hours of service in that year, *id.*, Ex. 4, at 18–19, but also contains a section that allows for an exception to those continuing eligibility requirements for death, disability, or retirement, but only if that section is marked, which it is not in this case. *Id.* at 19. The Defendants argue that, in the absence of an exception, Plaintiff, as retroactively disabled starting December 17, 2010, was not "employed" on December 31, 2007, and therefore was not eligible for contributions to the Profit Sharing Plan.

Defendants misapprehend Plaintiff's status as of the last day of the plan year. Plaintiff was on sick leave[1] at that time, protected by the FMLA/DCFMLA, and thus her job could not be taken away. *See* 29 U.S.C. § 2612(a)(1)(D) (entitling employee to sick leave); D.C. Code § 32-503. Yet that is exactly what Defendants tell this Court that they did. They assert that Plaintiff "has been receiving long term disability benefits *since December 17, 2007*, due to the ninety-day waiting period required by the insurance policy between the date of the disability's onset and the date on which benefits begin to be payable." Defs.' Facts ¶ 3 (emphasis added). As a result, according to Defendants, "it is undisputed that Plaintiff was not employed by [Jacobson Holman] as of the last day of the Plan Year, i.e., as of December 31, 2007." Defs.' Mem. at 8. Neither of these statements is borne out by the record or the law.

---

[1] Whether this leave was paid or unpaid makes no difference to the analysis.

The facts show a different scenario: Plaintiff was indeed an employee on December 31, 2007, and therefore was entitled to contributions to the Profit Sharing Plan on her behalf. Plaintiff was absent from work because of a serious medical condition that Defendants admit is covered by the FMLA/DCFMLA. She could not be terminated during the twelve-week period after September 17, 2007, under federal law, and she could not be terminated during the sixteen-week period after September 17, 2007, under the DCFMLA, *i.e.* January 7, 2008. Further, Defendants did not consider her a non-employee, given Mr. Moskowitz's careful efforts to get her to "resign" in February 2008.

Defendants just did not want to make a profit sharing contribution to Plaintiff's account, for which they give no legitimate explanation. They argue that Plaintiff was not entitled to a profit sharing contribution because she was disabled on December 31, 2007, and that the Profit Sharing Plan does not include the option to provide benefits to "'Active Participants who do not meet any last day . . . requirement . . . because they become disabled.'" Defs.' Mem., Ex. 4, p. 19. But Plaintiff was not disabled in December 2007. She remained in the employ of Jacobson Holman just as much as the person who missed work on December 31, 2007, because of a cold. That an insurance company decided in June 2008 that Plaintiff's disability benefits could commence as of December 17, 2007, did not–and could not – change her protected status under the FMLA/DCFMLA on December 31, 2007. Plaintiff had not resigned and the Defendants could not fire her as of December 31, 2007; she was employed on the last day of the plan year and therefore qualified for a profit sharing contribution.

Defendants breached the Profit Sharing Plan by refusing to treat Plaintiff as an active employee on December 31, 2007, and thereby failing to make a contribution for her to the Profit

Sharing Plan.[2]  Plaintiff fully qualified for a contribution because she had worked at least 1,000 hours and was an employee at year's end.  *See* Pl.'s Mem., Ex. 3, p. 9.  Defendants' motion for summary judgment as to the contribution to the Profit Sharing Plan will be denied.

### B. Unpaid Leave

Defendants concede that Plaintiff was paid for 4.51 hours of accrued, but unused leave, later than required under the D.C. Wage Payment Act.  Defs.' Facts ¶ 5.  Plaintiff requested the maximum amount of liquidated damages allowed under this statute, an amount equal to the unpaid leave.  *See* Second Am. Compl. ¶ 47.  Defendants have agreed to pay the amount of unpaid leave, plus the maximum amount of liquidated damages. *See* Notice of Offer of Judgment [Dkt. # 26].  Plaintiff, however, refuses to accept this amount, as she seeks reasonable attorney's fees and costs, pursuant to D.C. Code §32-1303.  It is premature to consider attorney fees and costs, but the Court finds that liability exists under the D.C. Wage Payment Act.  As such, Defendants' motion for summary judgment as to the unpaid leave will be denied.

### C. Year-End Bonus

Whether Plaintiff would have received a bonus in December 2007 had Defendants recognized her legal employment status, is a more difficult question.  As Defendants point out, Plaintiff could not identify the criteria for bonuses, whether there was any written document of the policy, who decided bonus amounts, or other important aspects of the policy.  Defs.' Mem. at 10.  However, in sixteen years with Jacobson Holman, Plaintiff received a Christmas bonus every year

---

[2]  Defendants' statement that Plaintiff "has been receiving long term disability benefits since December 17, 2007," Defs.' Facts ¶ 3, distorts the facts.  Months after December 17, 2007, Plaintiff applied for, qualified for, and was granted long term disability benefits, made retroactive to December 17, 2007.  Those facts do not cure the Defendants' failure to recognize Plaintiff's legally-protected employment status in December 2007.

but one; all other employees received a bonus in 2007; Plaintiff's 2007 performance review was very positive; and Defendants at that time failed to recognize Plaintiff's legal employment status.

Plaintiff alleges that the failure to pay her a bonus in 2007 violated the D.C. Wage Payment Act. The D.C. Wage Payment Act specifically defines "wages" as "monetary compensation after lawful deductions, owed by an employer for labor or services rendered, whether the amount is determined on a time, task, piece, commission, or other basis of calculation." D.C. Code § 32-1301(3). Defendants argue that their yearly discretionary bonuses are not guaranteed compensation and, arguably, do not fall under the definition of "wages." Defs.' Mem. p. 11. The Court agrees. "Bonuses" are covered under the D.C. Wage Payment Act only when they are "owed," and discretionary payments are not owed, but are given only by leave of the employer.[3] As such, the Court will grant summary judgment in favor of the Defendants on the claim of violation of the D.C. Wage Payment Act because Defendants were not required to pay Plaintiff an end-of-year discretionary bonus.

### D. FMLA/DCFMLA violations

**1. Retaliation by termination of employment**

Plaintiff alleges that the termination of her employment violated the FMLA/DCFMLA because it was in retaliation for filing a workers' compensation claim. Claims of retaliation under the FMLA are analyzed under the burden-shifting framework adopted in *McDonnell*

---

[3] Plaintiff argues, alternatively, that the bonus plan is covered by ERISA, as the bonus plan annually pays out benefits to its employees. Such an allegation is missing from the Complaint and there is no evidence in the record to support such a claim. Additionally, the Court notes that Plaintiff concedes that an ERISA plan requires maintenance of "a scheme by which [the employer] has ongoing administrative and financial promise of benefits to designated beneficiaries." Pl.'s Mem. at 17. There is no "financial promise" associated with a discretionary bonus. For these reasons, the Court rejects this new argument.

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Roseboro*, 606 F. Supp. 2d at 109. Under that burden-shifting framework,

> an employee may establish a prima facie case creating a presumption of retaliation by showing (1) that he exercised rights afforded by the [FMLA], (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the exercise of his rights and the adverse employment action.

*Id*. (citation omitted). If a prima facie case is established, the burden then shifts to the defendant to overcome this presumption by proffering a legitimate basis for this adverse action, and then the burden shifts back to a plaintiff to show that the proffered reason is pretextual. *Id*.

Even assuming a *prima facie* case was established by Plaintiff,[4] Defendants proffer a legitimate, non-discriminatory reason for termination, with no evidence from Plaintiff that the reason is pretextual. "The FMLA permits termination when an employee remains absent from work after his qualified leave expires." *Roseboro*, 606 F. Supp 2d at 111 (citing *Dogmanits v. Capital Blue Cross*, 413 F. Supp. 2d 452, 462 (E.D. Pa. 2005) ("[E]mployees who exhaust the twelve weeks of leave provided under the FMLA stand to lose their entitlement to job restoration . . . ."); *Austin v. Fuel Sys., LLC*, 379 F. Supp. 2d 884, 889 (W.D. Mich. 2004) ("[A]n employee who exceeds the permitted FMLA leave time has no right to be restored to his or her job."); 29 C.F.R. §§ 825.214(b) (an employee who cannot work because of the continuation of a serious health condition has no right to job restoration under the FMLA)).

Defendants were legally allowed to discharge Plaintiff when her protected leave

---

[4] It is questionable whether Plaintiff has shown a causal connection between the exercise of her rights and her alleged termination. If terminated at all, it would appear that Plaintiff was terminated because she was unable to work after exercising her rights to unpaid medical leave, not for actually exercising such rights.

ended and she was unable to return to work. Plaintiff remained an employee entitled to job restoration under FMLA/DCFMLA until the longer protected time period expired. At that point, Defendants could lawfully require her to return to work or lose her position. Plaintiff made it clear that she could not work after the expiration of that period of time: she told Mr. Holman that her pain was worse and she could not type; and she told the insurance company that she was permanently disabled, *i.e.*, unable to work. In fact, she has been continuously unable to return to her former job since September 17, 2007.

While both parties disagree as to whether Plaintiff resigned or was terminated, this distinction is irrelevant. Defendants were legally within their right to terminate Plaintiff after she had expended her allotted medical leave and she remained absent from work. She did so in this case. Because Defendants had a legitimate, non-discriminatory reason for terminating Plaintiff, and Plaintiff has offered no evidence of pretext, this claim must be dismissed. Therefore, summary judgment will be granted to Defendants on Plaintiff's termination claim within Count IV of the Second Amended Complaint.

### 2. Interference with FMLA/DCFMLA rights

Plaintiff also challenges the failure of Defendants to notify her of her FMLA/DCFMLA rights. She argues that "the failure to inform an employee that they are now considered to be covered under a rule that will change their status if they do not follow proper notification, reporting or fail to return to work at a particular date, interferes with the employee's rights to protect their position." Pl.'s Mem., p. 14. She suggests that she could have inquired about light duty, taken intermittent leave, or sought accommodations for her disability. *Id.*

While the Court might accept the premise of Plaintiff's argument on other facts, it

fails here. "Under both the interference and retaliation theories, the FMLA affords relief only for actual damages. Prejudice to the employee is a necessary element of these claims . . . ." *Roseboro*, 606 F. Supp. 2d at 108. As indicated above, Plaintiff *could not perform her job* in February 2008 or at any time thereafter.[5] Earlier or later, notice of her FMLA/DCFMLA rights would not have changed that dispositive fact. Had Defendants given Plaintiff notice of her FMLA/DCFMLA rights in February 2008, as she would now prefer, the result would be no different than it is. Thus, the Court can find no violation of her rights on this record. Summary judgment will be be granted on the claim of interference with her FMLA/DCFMLA rights within Count IV of the Second Amended Complaint, thereby dismissing Count IV in its entirety.

## IV. CONCLUSION

Defendants' motion for summary judgment will be granted in part and denied in part. The Court will grant summary judgment to Defendants and against Plaintiff on Count IV of the Second Amended Complaint on her claim of violations of FMLA/DCFMLA for termination of her position and interference with her rights under those statutes, as well as on the claim of a violation of the D.C. Wage Payment Act for not providing Plaintiff with a discretionary year-end bonus within Count III of the Second Amended Complaint. Summary judgment will be denied on all other claims.[6] A memorializing Order accompanies this Memorandum Opinion.

---

[5] For this reason, Plaintiff would not have been a qualified person with a disability under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, even had she sought an accommodation.

[6] Accordingly, the claims that remain are: (1) the claim of failure to make contribution to the Profit Sharing Plan within Count I of the Second Amended Complaint; and (2) the claim of unpaid leave within Count III of the Second Amended Complaint.

Date: December 21, 2010
                                              /s/
                                      ROSEMARY M. COLLYER
                                      United States District Judge